# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2250 | **DATE** | 6/27/2002 |
| **CASE TITLE** | Marvin Williams vs. Northeast Illinois RR d/b/a Metra | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment on Counts I and II of Complaint is denied. Status hearing set for 7/17/02 at 9:00 a.m. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials *FT/slcy*

2
number of notices

JUN 2 8 2002
date docketed

S.C.
docketing deputy initials

6/27/2002
date mailed notice

FT
mailing deputy initials

Document Number

41A

U.S. DISTRICT COURT
CLERK
02 JUN 27 PM 4:17
FILED

Date/time received in central Clerk's Office

MARVIN C. WILLIAMS,                    )
                                       )
                Plaintiff,             )
                                       )      Case No.   00 C 2250
        v.                             )
                                       )      Magistrate Judge
                                       )      Arlander Keys
NORTHEAST ILLINOIS REGIONAL            )
COMMUTER RAILROAD CORPORATION          )
d/b/a/ METRA/METROPOLITAN RAIL,        )
                                       )
                Defendant.             )

**DOCKETED**
**JUN 2 8 2002**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for
Summary Judgment on Counts I and II of Plaintiff's complaint.  For
the following reasons, the Court denies the Defendant's motion.

## BACKGROUND

The plaintiff, Marvin C. Williams, worked for the defendant,
Northeast Illinois Regional Commuter Railroad Corporation d/b/a
Metra/Metropolitan Rail ("Metra") as a Bridge and Building, or B&B,
Mechanic. (Def.'s Ans. ¶ 6.)  On October 13, 1997, Mr. Williams was
assigned to break up a section of concrete at one of Metra's
railway facilities, the Stewart Ridge station (the "Station").
(Pl.'s 12(N) ¶ 18, 22.)  A community group had requested that Metra
rehabilitate the Station, which was built in 1926 (Pl.'s 12(N) ¶ 2,
3.) The wood decking on the surface of the Station platform was
visibly "debilitated and rotted." (Def.'s Resp. Add'l Facts ¶ 57.)
Underneath and supporting the section of concrete that Mr. Williams

was assigned to break up was a wood structure that contained rotted wood. (Pl.'s 12(N) ¶ 34.) However, the concrete was not reinforced with any type of steel. (Pl.'s 12(N) ¶ 54; Def.'s Mem. Supp. Summ. J. at 2.)

Mr. Williams used a sledgehammer to break up the concrete. (Pl.'s 12(N) ¶ 22.) While standing on top of the platform, Mr. Williams broke up a section of concrete without sustaining any injuries. (Pl.'s 12(N) ¶ 33.) Mr. Williams then moved to ground level in order to break up the second section of concrete. (Pl.'s 12(N) ¶ 37.) When Mr. Williams hit the concrete with the sledgehammer, the rotted wood supporting the concrete gave way. (Def.'s Resp. Add'l Facts ¶ 58.) Mr. Williams alleges that he injured his back when his sledgehammer broke through the concrete and the rotted wood that supported the concrete gave way, thereby pulling him forward. (Pl.'s Resp. at 1; Def.'s 12(M) ¶ 31; Def.'s Resp. Add'l Facts ¶ 58.) Metra asserts that its other employees were breaking up concrete on the same day as Mr. Williams and did not suffer any injuries. (Def.'s 12(M) ¶ 30, 31.)

Frank Burg, an expert witness for Mr. Williams, testified that an OSHA regulation pertaining to demolition had been violated, because Metra failed to conduct an engineering survey. (Pl.'s Ex. 4 ¶ 2; Burg Dep. at 90-92.) Mr. Burg also opined that the rotted wood underneath the concrete could have been discovered upon the undertaking of an engineering survey. (Burg Dep. at 90.) However,

even with an engineering survey, Mr. Burg was unsure whether the rotted wood under the concrete would be immediately visible. (Burg Dep. at 113-14.)

Robert Farnesi, a Metra supervisor, confirmed that the platform at the Station needed to be repaired, because it was in "bad shape" and visibly old, dilapidated and rotten. (Farnesi Dep. at 51.) Mr. Farnesi testified that he inspected underneath the decking on the platform and found the timbers supporting the decking to be in good shape. (Farnesi Dep. at 15-16.) However, Mr. Farnesi did not crawl underneath the platform to inspect it. (Farnesi Dep. at 19.) Prior to beginning the rehabilitation project, Mr. Farnesi had knowledge about the concrete that Mr. Williams was assigned to break up and stated that it was in plain view. (Farnesi Dep. at 18.) Mr. Farnesi also testified that he told Metra foreman, Richard Sparks, about the concrete that he discovered. (Farnesi Dep. at 20.)

Mr. Sparks determined that a "hiltie," a tool used to break up concrete, was unnecessary for the particular job of breaking up the concrete that was assigned to Mr. Williams. (Sparks Dep. at 36-37; Def.'s 12(M) ¶ 20.) Mr. Sparks testified that a hiltie is "much smaller" than a jackhammer and is used for small jobs. (Sparks Dep. at 36.) Mr. Sparks testified that he would have requested the hiltie had he known he would find concrete on the platform. (Sparks Dep. at 37-39.) Mr. Sparks also testified that he and the

3

assistant foreman, Tod Ramos, discussed whether Mr. Ramos should get a hiltie, but Mr. Sparks said "no." (Sparks Dep. at 44.)

Froylan Guzman, another assistant foreman, testified that a jackhammer is often used to break up concrete sidewalks, in order to "protect my workers and to protect ourselves as well so as not to get killed by a sledgehammer" from an unplanned collapse. (Guzman Dep. at 23-24.)

Steven Gebler, a civil engineer and expert witness for Mr. Williams, focuses on "concrete structures, demolitions, and repair" in his business. (Pl.'s Resp. at 13.) Mr. Gebler authored a report stating that Mr. Williams should have been provided with a jackhammer to chip the concrete as is the standard for the "commercial sector" and as the United States Army Corps of Engineers and American Concrete Paving Association recommends. (Pl.'s Ex. 2 at 1-2.) Mr. Gebler's report also posits that, if a jackhammer or similar "mechanical impacting devices" is used on concrete without proper support beneath the concrete, the body would not overextend as it did in Mr. Williams' case. (Pl.'s Ex. 2 at 2.) Further, Mr. Gebler's report asserted that a sledgehammer is more difficult to control and that a jackhammer, or similar device, should have been used on the concrete instead (Pl.'s Ex. 2 at 1.)

Mr. Williams sought medical treatment for his back pain and underwent surgery to repair a herniated disc, which his treating

4

physician, Dr. Slack, agreed was consistent with Mr. Williams' claim that the sledgehammer pulled him forward on October 13, 1997.[1] (Pl.'s Ex. I at 7-8 13; Pl.'s Resp. at 1.) Mr. Williams returned to work on May 5, 1998, with a release from his treating physician, Dr. Slack, allowing him to resume his regular duties. (Def.'s 12(M) ¶ 42; Def.'s Ex. I at 16.)  However, Dr. Slack stressed that Mr. Williams' return to work was a "trial" and that he was to return for a follow-up visit in one month to ensure that he did not have any further back problems.  (Pl.'s 12(N) ¶ 43; Def.'s Ex. I at 16.)

Mr. Williams allegedly injured himself again on May 11, 1998, while digging[2] a trench at another Metra facility.  (Pl.'s 12(N) ¶ 44.)  In the course of his digging, Mr. Williams informed his

---

[1]  Metra asks the Court to strike from the record Dr. Slack's second deposition, because it was taken after December 17, 2001, which was the date of the close of discovery.  (See Def.'s Reply at 9-10.)  The Court need not rule on the admissibility of Dr. Slack's testimony at this stage of the proceedings, because Metra was present at Dr. Slack's second deposition and had the opportunity to cross-examine the witness. Thus, the Court finds that Metra was not prejudiced.  Further, the Court reasons that including Dr. Slack's second deposition will provide facts that are favorable to Mr. Williams, which is a necessary consideration in a summary judgment analysis.

[2]  The parties disagree as to whether Mr. Williams was "digging" a trench or "cleaning" debris from a trench on May 11, 1998.  (See Pl.'s 12(N) ¶ 44; Def.'s 12(M) ¶ 44).  However, Metra's witness, Jerry Bailey, wrote in his "Report of Injury" that Mr. Williams was "digging" a trench on May 11, 1998.  (Pl.'s Ex. 1.)  Therefore, given Metra's admission, the Court will hereinafter refer to the job performed by Mr. Williams on May 11, 1998 as "digging" a trench.

foreman, Mr. Guzman, that the work was too strenuous for him as a result of a prior injury to his back and that he was incapable of continuing. (Pl.'s 12(N) ¶ 47; Pl.'s Ex. 1). A Metra foreman, Jerry Bailey, completed a "Report of Injury," which notes Mr. Williams' complaint to Mr. Guzman and also notes Mr. Guzman's response to Mr. Williams to "take it easy and take his time." (Pl.'s Ex. 1.) The Report of Injury also states that Mr. Williams insisted on seeing a doctor for his back pain. (Pl.'s Ex. 1.)

Dr. Slack testified that he saw Mr. Williams for pain in his right leg following Mr. Williams' May 11, 1998 injury. (Def.'s Ex. I at 16.) Dr. Slack's medical opinion was that Mr. Williams' condition probably flared up as a result of digging the trench. (Pl.'s Ex. 7 at 19; Def.'s Ex. I at 17.) At a follow-up visit on May 26, 1998, Dr. Slack determined that Mr. Williams' condition had improved, and it was not until Mr. Williams returned to work that his pain recurred. (Pl.'s Ex. 7 at 17-18.)

Mr. Williams filed a two-count complaint against Metra under the Federal Employers' Liability Act, 42 U.S.C. § 51 et seq. (1998), for injuries he allegedly sustained on October 13, 1997 and May 11, 1998, respectively. Metra has filed a Motion for Summary Judgment on both counts, which the Court will now address.[3]

---

[3] On May 14, 2001, both parties consented to the exercise of jurisdiction by a magistrate judge. The Court was assigned to the present case on May 16, 2001.

6

I.  **Standard for Summary Judgment**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The governing substantive law establishes which facts are material. *Anderson*, 477 U.S. at 248.

The non-moving party must present more than a "metaphysical doubt as to the material facts" in order to survive summary judgment. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, "mere conclusory" allegations are not enough. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party will not survive summary judgment if he cannot present sufficient evidence to support each element of his case on which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage.

*Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). The court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. In addition, pursuant to Northern District of Illinois Local Rule 56.1,[4] the parties must support all disputed facts with "specific references to . . . parts of the record. . . ." The Seventh Circuit has articulated that courts need not "scour the record" in an attempt to locate the relevant information supporting the 56.1 claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

## II. Standard for Federal Employers' Liability Act Claims

The Federal Employers' Liability Act (the "FELA") allows an employee of a railroad company to recover damages for injuries received on the job that resulted from the negligence of the railroad company. 45 U.S.C. § 51 (1998). In order to show negligence under the FELA, the plaintiff must prove the common law elements of negligence, which are duty, breach, foreseeability and causation. *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th

---

[4] The Court notes that effective September 1, 1999, the Northern District of Illinois amended its Local Rules such that Local Rules 12(M) and 12(N) have been replaced by Local Rules 56.1(a)(3) and 56.1(b)(3), respectively. However, the parties use the old terminology in their respective filings. Therefore, the Court will refer to Local Rules "12(M)" or "12(N)" throughout this opinion in order not to be inconsistent with the parties' respective filings.

Cir. 1994). The FELA holds the railroad company to the "prudent person" standard, or what a "reasonable person would foresee as creating a potential for harm." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998).

However, the plaintiff's burden in proving negligence is substantially less than in a traditional negligence case. *Harbin v. Burlington R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). The United States Supreme Court has held that, under the FELA, the test of a jury case is whether the employer's negligence played any part, even the slightest, in producing the injury. *Rogers v. Missouri-Pac. R.R. Co.*, 352 U.S. 500 (1957). The FELA is generally a pro-plaintiff statute, and the plaintiff's "right to a jury determination is part and parcel of the liberal remedy afforded the working person under the FELA." *Harbin*, 921 F.2d at 131.

## A. Count I and Count II

### 1. METRA'S DUTY

#### a) *Is Metra governed by OSHA or FRA?*

The Federal Railroad Administration ("FRA") shares complimentary jurisdiction with the Occupational Safety and Health Administration ("OSHA"). 43 FED. REG. 10,583 (March 14, 1978). The FRA's 1978 Policy Statement (the "Policy Statement") states that the FRA's "proper role" is in "addressing hazardous working conditions in those traditional areas of railroad operations (i.e., 'the movement of equipment over the rails') in which (FRA) has

9

special competence." 43 FED. REG. 10,583, 10,585. Further, the Policy Statement addressed working conditions on railroad bridges and established that "OSHA regulations would not apply to ladders, *platforms, and other surfaces* on signal masts, catenary systems, railroad bridges, turntables, and similar structures, or to walkways beside the tracks in yards *or along the right-of-way. Id.* (emphasis added).

In a 1994 Final Rule, the FRA clarified its jurisdiction over rights-of-way. See 49 C.F.R. Part 214 (1994). The FRA dismissed as incorrect the assertion that the 1978 "Policy Statement makes the regulation of areas along railroad operation rights-of-way. . . exclusively the province of FRA." Id. (internal quotations omitted). The FRA asserted that such an erroneous reading of the Policy Statement

> embodies the very 'territorial' approach to jurisdiction FRA rejected in 1978 [and] misconstrue[s] the functional distinction drawn by the Policy Statement as a territorial division of jurisdiction ('fixed facilities such as offices and shops' as OSHA's versus 'areas along railroad operating rights-of-way' as FRA's), which it explicitly is not.

*Id.* Further, the FRA points out that "the Policy Statement divested OSHA of authority to regulate the *surfaces* on railroad bridges . . . but did not oust OSHA entirely from regulating any

working condition that arises on a railroad bridge . . . ."
(emphasis added). The FRA concluded that the "areas left to OSHA
are those in which FRA neither has, nor can quickly acquire, the
expertise necessary for effective implementation of relevant
standards." Id.

Metra is incorrect in asserting that the Policy Statement
explicitly excludes platforms. (See Def.'s Reply at 7.) The
Policy Statement divested OSHA of the authority to regulate only
the surface of platforms. Further, FRA has not issued an opinion
on the matter of areas underneath platforms specifically, and until
the FRA issues such an opinion or ruling, the Court finds that OSHA
regulations govern. Further, the plain meaning of the Policy
Statement suggests that the area underneath platforms is governed
by OSHA, and the surface of platforms is governed by the FRA.

Additionally, Metra argues that the platform is a right-of-
way, and therefore, FRA regulations prevail. (Def.'s Reply at 6.)
However, as the 1994 FRA Rules assert, such an argument is
erroneous. Metra misconstrues the "functional distinction drawn by
the Policy Statement" as a "territorial division of jurisdiction,"
which the FRA explained it is not. Therefore, the Court finds that
Metra is bound by the OSHA standards in this case.

Assuming, *arguendo*, that Metra is not bound by OSHA, Mr.
Williams may still offer Mr. Burg's testimony as evidence that
Metra breached its standard of care. Courts "have admitted

testimony of OSHA regulations as some evidence" of the standard of care in FELA cases. *Miller v. Chicago Northwestern Transp. Co.*, 925 F. Supp. 583, 587 (N.D. Ill. 1996). The *Miller* court held that OSHA was inapplicable to the case before it, because FRA regulations preempted OSHA regulations relating to the guarding of open pits, ditches, etc. *Id.* In *Miller*, plaintiff fell into an open maintenance pit and injured himself. *Id.* at 585. The court concluded that OSHA was inapplicable to railroad construction pits, because the "FRA is better equipped to assess proper clearance technology and employee knowledge" of inspection pits in locomotive or car repair facilities. *Id.* at 586-87. Thus, the court held that defendant was not bound by OSHA regulations. *Id.* at 587. However, the court further held that plaintiff may use OSHA standards as evidence of plaintiff's due care, or "what reasonable safety precautions are called for regarding open pits generally." *Id.* at 588.

Mr. Williams claims that Metra violated an OSHA regulation pertaining to demolition requirements. (Pl.'s Resp. at 12-13.) OSHA requires engineering surveys to be performed "prior to permitting employees to start demolition operation." 29 C.F.R. Part 1926.850 (1998). Mr. Burg testified that Metra violated OSHA regulations pertaining to demolition, because Metra did not conduct an engineering survey of the structure prior to the commencement of the rehabilitation project. (Pl.'s Resp. at 12.) Metra argues that

12

an engineering study was unnecessary, because the job did not encompass "demolition" nor does the platform area fall under OSHA's jurisdiction.

Whether the job performed by Mr. Williams was "demolition," and therefore, required an engineering survey is unclear from the record, because OSHA apparently does not define "demolition." (See Burg Dep. at 116.) However, the Court finds that, in viewing the facts in the light most favorable to Mr. Williams, the job of breaking up the concrete was demolition and, therefore, Metra violated OSHA. In the alternative, assuming *arguendo*, OSHA does not apply to Metra, Mr. Williams may use Metra's alleged violation of OSHA as some evidence of Metra's negligence.

> **b)** ***Is Mr. Williams' failure to provide expert testimony establishing the standard of care in the railroad industry fatal to his claim?***

Metra argues that Mr. Williams has failed to provide expert testimony that establishes the standard of care in the railroad industry, and therefore, summary judgment should be granted. (Def.'s Mem. Supp. Summ. J. at 7.) Metra asserts in its Memorandum of Law that "[i]n many FELA cases plaintiff's retain an expert in the railroad field to discuss common practices for particular railroad craft." (Id. at 8.) However, Metra cites to no cases to support its declaration.

Further, Metra contends that the Court should strike Mr. Burg's and Mr. Gebler's entire testimony, because they are not

13

experts in the railroad industry. (Def.'s Reply at 8). Mr. Burg is testifying as a safety expert, and as an 18-year veteran of OSHA with formal training in many areas, including concrete. (Burg Dep. at 11.) Mr. Gebler is a civil engineer and an expert in construction. The Court does not require an expert in the railroad industry where it finds the witnesses' expertise in other areas is relevant and sufficient. Neither Mr. Burg nor Mr. Gebler are required to cite to a statute, rule or regulation to prove their respective points. At the summary judgment stage, the Court must not make credibility determinations; such a province is for the trier of fact only. Thus, the Court holds that Mr. Williams has provided sufficient expert testimony for the trier of fact to make the decision as to their credibility.

B.    **Count I**

1.    **FORESEEABILITY OF INJURY – DID METRA HAVE NOTICE?**

In order for a plaintiff to survive summary judgment, he must present sufficient evidence of the defendant's negligence. *Walker v. Northeast Reg'l Commuter R.R. Corp d/b/a Metra*, 225 F.3d 895, 897 (7th Cir. 2000). A railroad "is not liable if it has no reasonable way of knowing that a potential hazard exists." *Williams*, 161 F.3d at 1062. The United States Supreme Court has held that, in establishing foreseeabilty in a FELA case, a plaintiff need not show that a similar incident occurred on a previous occasion, thereby putting defendant on notice of the

danger. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 118 (1963). In *Gallick*, plaintiff sued defendant railroad company after both of his legs became infected from insect bites and needed to be amputated. *Id.* at 109. Plaintiff was standing in a pool of stagnant water infested with "insects and vermin" while working for defendant. *Id.* at 109-10. The Supreme Court approved the trial courts' jury instruction which provided that "defendant's duties are measured by what is reasonably foreseeable under the circumstances – by what in the light of the facts then known should or could reasonably have been anticipated." *Id.* at 118 (internal quotations omitted).

Metra argues that it did not have notice of the danger in breaking up the concrete. (Def.'s Mem. Supp. Summ. J. at 5.) Metra asserts that its other employees broke up the concrete using sledgehammers the same day as Mr. Williams and did not sustain injuries. However, as established in *Gallick*, the plaintiff need not set forth evidence showing that similar injuries had occurred in order to prove forseeability, or that defendant had *actual* notice of the danger (emphasis added). The pertinent question is whether Metra should have known of: a) the existence of the rotted wood underneath the concrete and 2) the danger of using a sledgehammer to break through unreinforced concrete.

### a) *Did Metra have notice of the rotted wood under the concrete?*

Metra cites various cases in its Reply brief which it claims supports its argument that notice is required, and therefore, because Metra lacked notice, it cannot be held liable. (*See Williams*, 161 F.3d at 1062; *Kaminski v. Chicago River & Indiana R.R. Co.*, 200 F.2d 1, 4 (7th Cir. 1953); *Nichols v. Northeast Illinois Reg'l Commuter R.R. Corp. d/b/a Metra*, No. 97 C5694, 1999 WL 495131, at *2 (N.D. Ill. July 1, 1999); *Machroli v. Northeast Illinois R.R. Corp. a/k/a Metra*, No. 98 L 5875 (Cook County Cir. Ct. Sep. 24, 2001)[5]).

In *Kaminski*, the court held that the defendant did not have notice of the large hole into which plaintiff fell. 200 F.2d at 4. The court was persuaded by the fact that the hole was apparently in existence for only a short period of time before plaintiff's accident, and therefore, the defendant could not have reasonably known of this hole before plaintiff fell into it. *Id.*

In contrast, the *Nichols* court held that defendant "should or could reasonably have anticipated a potentially hazardous condition involving the ballast on the crosswalk." 1999 WL 495131, at *2. Plaintiff injured herself while walking along a crosswalk and tripping over some ballast, or crushed stones, that made its way

---

[5] The Court declines to further discuss *Machroli* in any detail, because neither the facts nor the holding in the state court decision add anything to this opinion that has not already been discussed.

16

onto the walkway. *Id.* at *1. The record showed that defendant was aware of the ballast and that it occasionally scattered from the railbed onto the crosswalk between the platforms. *Id.* at *2. The court declined to inquire into the duration of time the ballast existed on the crosswalk, because the court found that defendant had already admitted to knowing about the ballast, and therefore, the issue of duration was moot. *Id.* n. 2.

Metra correctly asserts that notice is a requisite element for a plaintiff to prevail in a FELA claim, and the cases cited above support that assertion. Apparently, Metra has not fully analyzed these cases, however, because the cited cases do not necessarily support Metra's argument that it lacked notice. Unlike the short period of time that the hole existed in *Kaminski*, the rotted wood under the concrete was more than likely present for a much greater period of time. The platform was originally built in 1926, and neither party set forth any evidence showing whether any part of the platform had been rehabilitated since its original construction. Therefore, the platform and the materials comprising the platform are probably more than 75 years old, and the wood underneath the concrete was very likely to have been rotted or become worn over that long period of time. The platform itself was found to be rotted, and therefore, it is reasonable to infer that the wood underneath the concrete would be rotted as well. Although Metra claims that the wood on the platform is different than the

wood underneath the platform, a jury could reasonably conclude that, given the condition of the wood on the platform, the wood underneath the platform and under the concrete was also rotted.

Metra claims that it did not have prior notice of the defective wood support under the concrete. (Def.'s Reply at 2.) Metra points to certain statements made by Mr. Williams' expert witness, Mr. Burg, to support its contention. Mr. Burg testified that the rotted wood holding up the concrete was not visible, nor would it be immediately visible upon the undertaking of an engineering survey.

However, Mr. Williams points out that Mr. Farnesi's testimony that the platform needed repairs because it was visibly "old and rotten" shows that Metra should have known about the rotted wood supporting the concrete. Metra argues that Mr. Williams is taking Mr. Farnesi's statement out of context, because Mr. Farnesi was referring to the *surface* of the platform and not to the area at issue in the case – underneath the platform. (Def.'s Reply at 3.) In order to further counter Mr. Williams' claim that Metra had constructive notice, Metra cites Mr. Farnesi's earlier testimony about finding the platform to be in good shape after inspecting it himself. However, the fact that an inspection conducted by Mr. Farnesi did not uncover rotted wood could lead a reasonable jury to conclude that Metra was negligent in its inspection. In viewing the facts in the light most favorable to Mr. Williams, the Court

18

holds that Mr. Williams has established a genuine issue of material fact as to whether Metra had notice of the rotted wood underneath the concrete.

### b) *Did Metra have notice that the sledgehammer was unsafe for breaking concrete?*

Metra reiterates Mr. Williams' burden in Metra's Memorandum in Support of Summary Judgment that Mr. Williams must "produce *some* evidence that the employer's chosen method was *not* reasonably safe." (Def.'s Mem. Supp. Summ. J. at 7.) However, the United States Supreme Court has permitted plaintiffs to bring forth evidence of safer, alternative methods to show that the defendant was negligent in not providing such methods. *Stone v. New York, Chicago, & St. Louis R.R. Co.*, 344 U.S. 407, 409 (1953). Metra cites to *Atlantic Coast Line R.R. Co. v. Dixon*, 189 F.2d 525 (5th Cir. 1951) as support for its contention that Metra need only provide tools that are reasonably safe – not necessarily the "latest, best or most perfect." (Def.'s Mem. Supp. Summ. J. at 8.)

Mr. Williams has provided enough evidence to show that a genuine issue of material fact exists as to whether the sledgehammer was reasonably safe. Mr. Sparks' and Mr. Guzman's respective testimonies show that if either man knew they were going to encounter concrete, they would have used either a hiltie or a jackhammer. However, it appears from Mr. Farnesi's testimony that Mr. Sparks knew Mr. Williams would encounter concrete. Mr. Sparks' contradictory testimony is a credibility question which only the

19

jury can resolve. Further, contrary to Metra's claim that a sledgehammer was reasonable, Mr. Guzman's statement about not wanting to be killed by the sledgehammer is certainly some evidence that the sledgehammer is unsafe for concrete. Further, Mr. Gebler's opinion also provides evidence of the questionability of the sledgehammer's safety and the reasonableness of Metra's decision to use it. Thus, Mr. Williams has brought forth enough evidence to question whether Metra's use of the sledgehammer was reasonable and whether a safer alternative method was available.

Metra argues that the sledgehammer is significantly lighter than the hiltie or jackhammer and therefore, the sledgehammer was easier to control; thus, Metra concludes that the sledgehammer was the safest tool to use on the job. (Def.'s Mem. Supp. Summ. J. at 8.) However, Metra's argument fails for two reasons. First, Mr. Gebler's, Mr. Sparks' and Mr. Guzman's respective testimonies all establish that the sledgehammer may not have been the appropriate tool for breaking up the concrete. Second, the weight of the jackhammer and hiltie are irrelevant. The Court takes judicial notice that both of these tools remain in relatively one place – on the ground. Unlike the sledgehammer, a person does not raise the jackhammer or hiltie above one's head and then swing it back down to the ground. Therefore, Metra's discussion of the tools' respective weights, and the possibility that Mr. Williams would have been unable to control the heavier tools, is irrelevant.

20

Metra's citation to *Dixon* and *Stillman* does not further its case. The tools provided to Mr. Williams must be "reasonably safe and suitable," although they need not be necessarily perfect. *See, e.g.*, *Dixon*, 189 F.2d at 527. On the other hand, *Stone* requires that the trier of fact determine whether the method was reasonable. 344 U.S. at 409. Only when it is determined that the railroad exercised reasonable care is testimony regarding safer alternatives properly excluded. *Stillman*, 811 F.2d at 838. Mr. Williams has brought forth enough evidence to question Metra's reasonableness in providing him with a sledgehammer. The Court, therefore, holds that the sledgehammer's safety and the availability of a safer alternative are genuine issues of material fact that prohibit a finding of summary judgment.

## II. <u>Count II</u>

Metra argues that Mr. Williams has not proven that the trench digging activity, which he alleges caused him to reinjure himself, was dangerous or that Metra provided him with a defective tool. (Def.'s Mem. Supp. Summ. J. at 5.) Metra also claims that Mr. Williams' failure to bring forth expert opinion establishing Metra's negligence relating to Count II defeats Mr. Williams claim. (Id. at 9.) Finally, Metra argues that Mr. Williams failed to prove medical causation from the alleged injury.[6] (Id.)

---

[6] The Court has stated earlier that it will include both of Dr. Slack's depositions (*see supra* note 1). Dr. Slack gave his
(continued...)

In *Stone*, plaintiff was injured while he was removing "ties" from the railroad tracks. 344 U.S. at 408. At one point, plaintiff informed defendant of his inability to remove one of the ties. *Id*. Defendant ordered him to pull harder, and when plaintiff still could not remove the tie, defendant told him he was not pulling hard enough. *Id*. Finally, with plaintiff still unable to remove the tie and defendant still telling plaintiff he was not pulling hard enough, plaintiff gave a hard pull and hurt his back. *Id*. In finding defendant negligent, the Supreme Court held that "the likelihood of injury to men pulling or lifting beyond their capacity is obvious." *Id*. at 409. The Supreme Court found that it was likely that plaintiff would injure himself after repeatedly informing defendant that he was pulling as hard as he could, and defendant continuously telling him to pull harder. *Id*. The Supreme Court also found defendant negligent, because three apparently safer alternative methods for removing ties existed. *Id*. Finally, the Supreme Court held that there was evidence of a

---

[6](...continued)
medical opinion that Mr. Williams was probably correct in his assertion that the incident with the sledgehammer on October 13, 1997 was the cause of his back pain and herniated disc. Dr. Slack also testified that it was his medical opinion that Mr. Williams' condition probably flared up as a result of digging the trench. On both occasions when Mr. Williams went to see Dr. Slack after allegedly injuring himself at work, Dr. Slack found medical evidence of an injury. The Court is convinced that Mr. Williams has set forth substantial evidence beyond mere conclusory allegations to survive summary judgment on the issue of medical causation.

causal connection between defendant's order to pull harder and plaintiff's back injury. *Id.*

Similarly, Mr. Williams complained to Mr. Guzman of his pain at least once, although Mr. Williams claimed he complained repeatedly. (Pl.'s 12(N) ¶ 60.) The Court does not agree with Metra's assertion that it is "uncontroverted" that Mr. Williams was not ordered to continue digging the trench. (Def.'s Reply at 5.) Mr. Guzman told Mr. Williams to "take it easy and take his time," whereby Mr. Williams allegedly injured his back again. The Court concludes that a genuine issue of material fact exists as to whether Mr. Williams was ordered to continue digging after his initial complaint of pain. This Court holds, as the Supreme Court did in *Stone*, that a reasonably prudent person could find medical causation in Mr. Guzman's apparent order for Mr. Williams to continue digging the trench and Mr. Williams' alleged subsequent injury. Especially fatal to Metra's case is that Metra knew that Mr. Williams had a previous injury and had just returned to work after having back surgery. Dr. Slack's release of Mr. Williams to his previous duties does not exculpate Metra, because Metra may have forced Mr. Williams to keep digging after he had already complained of his pain. Viewing the facts in Mr. Williams favor, the trier of fact could determine that Metra was negligent in assigning the trench digging activity to Mr. Williams and ordering him to keep digging after he complained of pain.

Mr. Williams does not claim that digging a trench is inherently dangerous nor that the tool he was using was defective; rather, Mr. Williams claims that Metra was negligent in assigning him to dig the trench after he had only recently returned from having surgery. Similar to the finding in *Stone*, a prudent person could find a causal connection between Mr. Williams digging a trench and reaggravating a recent back injury.

Contrary to Metra's claim, Mr. Williams need not produce expert testimony to prove causation. *See Harbin*, 921 F.2d at 132. The *Harbin* court held that the FELA statute does not require expert testimony to establish a causal connection between the activity and the injury. *Id.* Metra cites to *Schmaltz v. Norfolk & W. Ry. Co.*, 896 F. Supp. 180, 183 (N.D. Ill. 1995) to support its assertion that expert testimony is required to establish causation in FELA cases. The *Schmaltz* court cited the general premise that "expert testimony is generally required to establish a causal connection between an accident and an injury unless the connection is a kind that would be obvious to a layman, such as a broken leg from being struck by an automobile." *Id.* at 182 (internal quotations and citations omitted). The court further found that the "existence of a causal relationship between herbicide exposure and respiratory illness is not obvious to lay people." *Id.* Thus, the court held that plaintiff could not prove the requisite element of causation, because plaintiff offered no expert testimony. *Id.* at 183.

Unlike the facts in *Schmaltz*, a lay person could reasonably infer that Mr. Williams would suffer back injury as a result of his activities at Metra on both occasions.  A back injury caused by swinging a sledgehammer and overextending one's swing because rotted wood supporting the structure gave way is not such an elusive concept.  Similarly, continuing to dig after complaining of back pain and then suffering a recurrence of a back injury would be obvious to a lay person.  The Court's finding is not inconsistent with *Schmaltz,* because the jury must first decide the issues of causation and fault, as *Harbin* requires.   Therefore, this Court holds that Mr. Williams' failure to provide expert testimony to establish causation for Count II of his Complaint is not fatal to his case.

**CONCLUSION**

Mr. Williams has offered enough evidence to survive summary judgment in his FELA case against Metra.  Mr. Williams has shown that genuine issues of material fact exists as to whether 1) Metra had notice of the danger of rotted wood underneath the concrete; 2) Metra was negligent in providing Mr. Williams with a sledgehammer to break the concrete; and 3) it was reasonably foreseeable that Mr. Williams would be injured as a result of digging the trench after he complained of back pain to his foreman.

**IT IS THEREFORE ORDERED** that:

Metra's Motion for Summary Judgment on Counts I and II be, and the

same hereby is, **DENIED**.

DATED: June 27, 2002          ENTER:

                              _____
                              ARLANDER KEYS
                              United States Magistrate Judge